**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

LISANET RAMIREZ CORTINA,
*through next friend*
MIGUEL ERNESTO CORTINA HERNANDEZ,

        Petitioner,

        v.                               Case No. 2:26-cv-00458-KWR-JFR

WARDEN, Otero County Processing Center,
MARY DE ANDA-YBARRA, Field Office Director of
Enforcement and Removal Operations, El Paso
Field Office, Immigration and Customs
Enforcement; TODD LYONS, Acting Director
Immigration and Customs Enforcement;
KRISTI NOEM, Secretary, U.S. Department
Of Homeland Security; AND PAMELA BONDI,
U.S. Attorney General,

        Respondents.

**<u>ORDER GRANTING IN PART HABEAS PETITION</u>**

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas

Corpus (Doc. 1). Petitioner asserts that her procedural due process rights were violated when she

was re-detained by ICE without a custody hearing after having been released on her own

recognizance under 8 U.S.C. § 1226(a). The Court interprets the Petition as asserting that

Petitioner is entitled to a bond hearing under § 1226(a). Respondents assert that she is mandatorily

detained under 8 U.S.C. § 1225(b)(2)(A). As explained below, the Court finds that Petitioner's due

process rights require a bond hearing pursuant to 8 U.S.C. § 1226(a).

Having reviewed the parties' pleadings, exhibits, and the relevant law, the Court finds that the Petition is well-taken, and therefore, is **GRANTED in part**. Respondents shall provide Petitioner with a bond hearing under § 1226(a) within seven (7) days of the entry of this order.

## BACKGROUND

Petitioner is a citizen of Cuba and is detained at the Otero County Processing Center by ICE. Pet. at 7, Doc. 1. She is proceeding *pro se*. The Petition, filed by Petitioner's uncle and Next Friend Miguel Ernesto Cortina Hernandez, appears to allege that she is not subject to a removal order and has not received an adequate bond hearing. *See* Doc. 1 at 2-3.

On August 17, 2022, Petitioner arrived at the United States border and was detained. Pet. at 6. On August 20, 2022, she was ordered released on recognizance under a Form I-220A, a form of conditional release under § 1226(a). Pet. at 6; Doc. 1 at 19 (providing that Petitioner was released under Section 236 of the Immigration and Nationality Act). Respondents do not dispute that she was released under § 1226(a). *See* Doc. 7. She asserts that she complied with conditions of release and arrived at supervision check-ins with ICE. Pet. at 6-7. She filed an Application to Register Permanent Residence or Adjust Status under the Cuban Adjustment Act with USCIS. *Id.* At her supervision appointment on November 24, 2025, Petitioner was taken into custody by ICE. Pet. at 7.

On September 5, 2025, the Board of Immigration Appeals ("BIA") issued a decision holding that immigration judges lack authority or jurisdiction to consider bond requests for any person who entered the United States without admission. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225 (B.I.A. 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens . . . who are present in the United States without admission."). In light of *Hurtado*,

Petitioner has remained in custody without an opportunity to post bond or request release because her detention has been classified as mandatory under 8 U.S.C. § 1225(b)(2)(A).

Petitioner asserts that her detention violates her due process rights under the Fifth Amendment, and she was detained without adequate notice and without probable cause. Pet. at 8. Petitioner also asserts that she was re-detained without any individualized determination and without any legal basis. Doc. 8 at 2, 3. The Court interprets Petitioner as arguing that she is entitled to a bond hearing under § 1226(a). Respondents similarly interpret the Petition as asserting that her due process rights were violated as she was not afforded a bond hearing under § 1226(a). *See* Doc. 7. Petitioner also asserted that the conditions of her confinement violated her Eighth Amendment right to be free from cruel and unusual punishment. She asserts that she was transferred between facilities with "degrading conditions" and without timely access to food or medical care. Doc. 1 at 9. She notes that there is no hot water or furniture and she contracted parasites. *Id.* at 9-10.

Respondents filed a response to the Petition in which they incorporated the arguments they raised in a prior case before the Court. *See* Resp., Doc. 7 at 2-3 (citing *Munoz Teran v. Bondi*, 2:25-cv-1218 KWR-SCY, 2026 WL 161527 (D.N.M. Jan. 21, 2026)). The Respondents' response in *Munoz Teran* did not raise administrative exhaustion or jurisdiction. Moreover, neither the response in this case nor in *Munoz Teran* asserted that the petitioner was detained under § 1225(b)(1). Rather, here Respondents assert that Petitioner is detained under § 1225(b)(2)(A). Therefore, the Court declines to *sua sponte* raise administrative exhaustion or detention under § 1225(b)(1).

**LEGAL STANDARD**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A challenge to immigration detention is "properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## DISCUSSION

Petitioner asserts that her due process rights were violated when Respondents re-detained her without notice and a custody determination, as required under § 1226(a). Respondents contend that Petitioner is held under § 1225(b)(2)(A) and subject to mandatory detention. Doc. 6 at 2. As explained below, the Court concludes that Petitioner is entitled to a bond hearing under § 1226(a).

**I.** **The discretionary detention provisions under § 1226(a) apply to Petitioner, rather than the mandatory detention provisions under § 1225(b)(2)(A).**

Respondents argue that Petitioner's detention is mandatory under § 1225(b)(2)(A). Petitioner contends that her initial release was under the discretionary authority of 8 U.S.C. § 1226(a). The Court agrees that Petitioner was initially released pursuant to § 1226(a) and that Respondents have not presently detained Petitioner under § 1225(b)(2)(A).

Section 1226(a) allows immigration officers, in their discretion, to detain noncitizens or release them on conditional parole. 8 U.S.C. § 1226(a). Release on one's own recognizance is a form of conditional parole under § 1226(a)(2)(B). *See Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (B.I.A. 2023) ("[They were] released on their own recognizance pursuant to DHS' conditional parole authority under . . . 8 U.S.C. § 1226(a)(2)(B)."); *Ortega-Cervantes v. Gonzales*,

501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the . . . phrase 'release on recognizance' [is] another name for 'conditional parole' under § 1226(a).").

Here, Petitioner was released on her own recognizance, a form of conditional parole, pursuant to § 1226(a) s*ee Matter of Cabrera-Fernandez*, 28 I. & N. Dec. at 747. Release on recognizance is not categorized as "humanitarian" or "public benefit" parole under 8 U.S.C. § 1182(d)(5)(A). Therefore, Petitioner's initial release was authorized by § 1226(a) which indicates that Petitioner cannot now be detained under § 1225(b). *See Matter of M-S-*, 27 I. & N. Dec. 509, 516 (Att'y Gen. 2019) ("Yet [§ 1225] (under which detention is mandatory) and [§ 1226(a)] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens."); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025) (noting that the respondents did not "dispute that [§§ 1225 and 1226] . . . are mutually exclusive"). Furthermore, the Court finds that a plain reading of § 1225(b)(2)(A) demonstrates that Petitioner is not "seeking admission," and thus, her detention is governed by § 1226(a).

When interpreting a statute, courts first "examine the statute's plain text" and "[a]bsent ambiguity, [the] analysis ends there." *United States v. Koerber*, 10 F.4th 1083, 1112 (10th Cir. 2021). Should the analysis continue, the Court considers the "language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) ("We also take into account the 'broader context of the statute as a whole' when ascertaining the meaning of a particular provision." (citation omitted)). Courts also consider traditional canons of statutory interpretation. *Conrad*, 585 F.3d at 1381; *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011). Generally, the Court considers non-textual evidence bearing on Congress's intent or purpose, such as legislative history, only if the statutory language

is ambiguous. *See, e.g.*, *United States v. Husted*, 545 F.3d 1240, 1247 (10th Cir. 2008) ("[I]t is a longstanding principle that absent ambiguity we cannot rely on legislative history to interpret a statute.").

Under the Immigrant and Nationality Act ("INA"), two statutes generally govern a noncitizen's detention pending a final order of removal: §§ 1225 and 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1225, which mandates detention and does not afford a bond hearing, applies when "an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Section 1226 provides that a noncitizen "may be arrested and detained" pending a removal decision. § 1226(a). Under § 1226(a), the Attorney General may detain the arrested noncitizens, release them on bond, or release them on conditional parole. Section 1226(c) mandates detention for a noncitizen that is (1) present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits" to committing certain criminal acts. 8 U.S.C. § 1226(c)(1)(E).

In sum, immigration law authorizes the detention of "certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (quoting *Jennings*, 583 U.S. at 289). For Petitioner's detention to be governed by § 1225(b)(2)(A), the Court must find that Petitioner (1) is an "applicant for admission," (2) who is "seeking admission," and (3) is "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A).

Petitioner is likely an "applicant for admission" as defined by statute. "[A]pplicant for admission" is defined as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "Admission" and "admitted" mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Here, Petitioner is "present in the United States" and she has not been inspected or admitted. Thus, per the statutory definition, Petitioner may be deemed an "applicant for admission" thereby satisfying the first criteria of § 1225(b)(2)(A).

The crux of the § 1225(b)(2)(A) inquiry is whether Petitioner can be deemed "seeking admission." As explained below, after a plain reading of the statute, the Court finds that Petitioner, who has been living in the United States for over a year, is not "seeking admission."

The Court begins with the plain text of the phrase "seeking admission." *See Koerber*, 10 F.4th at 1112. Since "seeking" is statutorily undefined, the Court will first consider the word "admission." "Admission" is statutorily defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." § 1101(a)(13)(A). "Entry" is statutorily undefined. Respondents do not assert that the word "entry" has any unusual, technical meaning, and therefore, the Court will apply its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017). "Entry" ordinarily means "[t]he action or an act of entering a place, area, building, etc." *Entry*, Oxford English Dictionary, https://www.oed.com/dictionary/entry_n?tab=meaning_and_use#5515547 (last visited Mar. 26, 2026); *see also Entry*, *Black's Law Dictionary* (12th ed. 2024) ("*Immigration*. Any entrance of an alien into the United States, whether voluntary or involuntary."). Thus, the word "admission," as used in § 1225(b)(2)(A), refers to a noncitizen's lawful act of physically entering the United States after inspection and authorization by an immigration officer.

Turning to the statutorily undefined word "seeking," in this context, it ordinarily means trying to obtain something or trying to bring about or effect. *Seek*, Oxford English Dictionary, https://www.oed.com/dictionary/seek_v#23724107 (last visited Mar. 26, 2026). In choosing the present participle "seeking," courts should give effect to Congress's verb choice and find that "seeking" signals present and continuous action. *Carr v. United States*, 560 U.S. 438, 448 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach."); *see also Present Participle*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/present%20participle (last visited Mar. 26, 2026). Therefore, the Court finds that a plain reading of the phrase "seeking admission" demonstrates that § 1225(b)(2)(A) applies to noncitizens who are presently trying to lawfully and physically enter the United States.[1] Section 1225(b)(2)(A) does not apply to noncitizens who, like Petitioner, have lived in the United States for an extended duration and are not presently seeking lawful entry into the United States.

8 U.S.C. § 1225(a)(3) indicates that Petitioner is not "seeking admission." Section 1225(a)(3) provides that "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." *Id.* The word "or" is "almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'" *United States v. Woods*, 571 U.S. 31, 45 (2013) (citation omitted).

---

[1] The Court understands the ordinary meaning of the word "entry," as used in the statute, to mean the physical act of going into the country. The meaning aligns with how "entry" is understood and used by the United States Supreme Court in the immigration context. The word "entry" has long referred to physically going into the country, regardless of whether the entrant is legally in the United States. *See, e.g., Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality."); *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

Additionally, the use of the phrase "or otherwise" signals that the term "applicants for admission" has a different meaning than the term "seeking admission." *Or Otherwise*, Oxford English Dictionary, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058328 (last visited Mar. 26, 2026) ("In another way or ways; in a different manner; by other means; in other words; differently.").[2] Thus, a plain reading of § 1225(a)(3) demonstrates that Petitioner may be deemed an "applicant for admission" without necessarily being deemed "seeking admission."

Further, Respondents' interpretation renders recent amendments to 8 U.S.C. § 1226(c) superfluous. Section 1226(c)(1)(E) mandates detention for certain noncitizens who are implicated in certain crimes. It requires detention for a noncitizen who is (1) inadmissible as an alien present in the United States without being admitted or paroled, and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits" to committing certain crimes. Respondents' interpretation of § 1225(b)(2)(A) would require the detention of every noncitizen who is present in the country without being admitted or paroled. Such an interpretation would render the recent § 1226(c)(1)(E) amendment superfluous in that detention would be required regardless of the noncitizen's criminal involvement.

The Supreme Court, in dicta, has recognized that § 1225(b) generally applies "to aliens seeking entry into the United States" and that § 1226(a) "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303. The *Jennings* Court further noted that § 1226(a) creates

---

[2] The grammatical placement of "or otherwise" also indicates that "seeking admission" must mean something different than "applicants for admission." *Or Otherwise*, Oxford English Dictionary, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058910 (last visited Mar. 20, 2026) ("[F]ollowing a noun, adjective, adverb, or verb, to signify a corresponding word, thing, idea, etc., of opposite or alternative meaning" (citation modified)). Here, the phrase "or otherwise" follows a noun, "applicants for admission," signifying that the phrase "seeking admission" is a "corresponding word, thing, idea, etc., of opposite or alternative meaning." *Id.*; *see also* § 1225(a)(3).

a default rule for noncitizens present in the United States "by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also permitting "the Attorney General to release those aliens on bond." *Id.* at 303. Thus, the Supreme Court's construction of §§ 1225(b) and 1226(a) align with this Court's reading of the phrases "applicant for admission" and "seeking admission."

The Court's statutory reading of § 1225(b)(2)(A) is consistent with the decisions of multiple courts, which have found that a person who has been present in the United States for an extended period of time is not "seeking admission" and therefore not subject to mandatory detention under § 1225(b)(2)(A). *See, e.g.*, *Castañon-Nava*, 161 F.4th at 1061; *see also Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (collecting cases in Appendix A); *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-CV-1031-KG, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) ("Noncitizens seeking admission are those who have not effected an entry into the United States." (citation modified)); *Buenrostro-Mendez v. Pamela Bondi*, 166 F.4th 494, 510 (5th Cir. 2026) (Douglas, J., dissenting).

Here, Respondents released Petitioner on her own recognizance expressly under § 1226(a), and she remained in the United States for over a year before her re-detention. Respondents do not suggest or point to any facts suggesting that Petitioner was seeking lawful, physical entry into the United States at the time of her arrest. Applying this statutory interpretation to the present facts, the Court finds that Petitioner is not "seeking admission" under § 1225(b)(2)(A). Accordingly, Petitioner's detention is governed by § 1226(a).

**II.    <u>Petitioner's procedural due process rights call for a bond hearing.</u>**

Petitioner contends that her procedural due process rights were violated when she was not provided notice and a bond hearing prior to being re-detained.[3] Respondents contend that Petitioner is mandatorily detained under § 1225(b) and not entitled to a bond hearing. The Court finds that due process affords Petitioner a bond hearing under § 1226(a).

In considering a due process claim, the Court considers whether there exists a protected liberty interest and whether the procedures provided afford the individual adequate process. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2001); *see also Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1244 (10th Cir. 2012) ("To claim a violation of his right to procedural due process, Petitioner 'must have a liberty or property interest in the outcome of the proceedings.'").

**A. Liberty interest.**

As explained below, Petitioner has a protected liberty interest. Under the Fifth Amendment, noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Therefore,

---

[3] Petitioner does not specify whether he refers to "notice" as notice of a bond hearing pursuant to § 1226(a) or notice about the revocation of her conditional parole under 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9) (2026). Petitioner blanketly refers to "notice" and does not refer to notice regarding the revocation of her conditional parole. It appears that Petitioner's reference to "notice" concerns notice of a bond hearing. In any event, the Court will not make Petitioner's arguments for her and declines to *sua sponte* determine whether Petitioner meant notice of the revocation of conditional parole or notice before a hearing before an immigration judge. Petitioner makes no argument and provides no documentation suggesting that her conditional parole was improperly terminated. Thus, the Court will not construe her reference to notice as such. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments or perform research on behalf of litigants).

immigration detainees "are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). A noncitizen that is considered to have not entered the country is only entitled to "the procedure authorized by Congress." *Sierra Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001) (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). However, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

At the very least, Petitioner maintains an interest in receiving the process authorized by Congress. *Sierra*, 258 F.3d at 1218. Petitioner also has a liberty interest in freedom from detainment. *See Hamdi*, 542 U.S. at 529.

Since Petitioner was initially released on a form of conditional parole pursuant to § 1226(a), the Court finds that Petitioner is entitled to a bond hearing under the statute. *See United States v. Gonzalez-Fierro*, 949 F.3d 512, 520 (10th Cir. 2020) ("[T]he Supreme Court has ruled that when Congress enacts a procedure, aliens are entitled to it." (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084–85 (9th Cir. 2011))). Having found that Petitioner has protected interests in receiving the procedure authorized by Congress and her freedom from detention, the Court considers what amount of process is due.

**B. Due process requires that Petitioner receive a bond hearing.**

Since the Court finds that Petitioner has a protected liberty interest, the Court must examine the adequacy of the procedure to ensure that the deprivation meets the demands of the Constitution. *See Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). In determining what process is due, the Court considers (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

**1. Private interest.**

The first *Mathews* factor considers the private interest at stake. Petitioner's basic interest in being free from detention is at stake. *See Hamdi*, 542 U.S. at 529 (finding that freedom from detention is "the most elemental of liberty interests"). Petitioner's interest in receiving the procedural protections authorized by Congress under § 1226(a) is also at stake. *See Sierra*, 258 F.3d at 1218. These interests possess significant weight. Even balanced against the "broad power over naturalization and immigration" possessed by Congress that justifies "rules that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 521 (2003), Petitioner possesses two interests that tip the scale in her favor. Thus, the Court finds that the first *Mathews* factor favors Petitioner.

**2. Risk of erroneous deprivation and the value of additional safeguards.**

The second *Mathews* factor considers the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards. Since Respondents argue that Petitioner is detained pursuant to § 1225(b), Petitioner has not received the bond hearing she is

owed under § 1226(a). The risk of erroneously revoking Petitioner's conditional release remains high as, under Respondents' interpretation, she will not receive a bond hearing to determine whether she presents a flight risk or danger to the community. Without the opportunity to have the hearing to which Petitioner is entitled, the risk of erroneous deprivation will remain high. A bond hearing before a neutral immigration judge will provide immense value as an additional safeguard. Therefore, the second *Mathews* factor favors Petitioner.

### 3.  Government's interest.

The final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. When considering the Government's interest, the Supreme Court has instructed that "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). The Government has an interest in enforcing its immigration policies and preventing noncitizens from remaining "in the United States in violation of our law." *Demore*, 538 U.S. at 518. The Court recognizes that "[o]ver no conceivable subject is the legislative power of Congress more complete." *Reno*, 507 U.S. at 305 (citation modified). Thus, the Government's interest in enforcing its immigration policies is considerable.

Although the Government's interest in enforcing its immigration policies must be afforded considerable weight, the Government's interest in detaining Petitioner without providing the procedure she is due does not weigh nearly as heavily as its interest in lawful immigration enforcement. The fiscal and administrative burdens of providing a bond hearing under § 1226(a)

14

are minimal and do not provide adequate justification for foregoing the hearing entirely. Thus, the third *Mathews* factor weighs in favor of Petitioner.

Accordingly, the Court finds that the *Mathews* factors weigh in favor of Petitioner, and Petitioner is entitled to a bond hearing under § 1226(a).

### III.    The Court finds that a bond hearing is an adequate remedy.

Petitioner requests immediate release.  Petitioner cites no law and applies no standard in her Petition demonstrating that a bond hearing would be inadequate. Because Petitioner does not demonstrate that § 1226(a) will provide inadequate process, the Court will not order that she be immediately released. Therefore, exercising its discretion under § 2241, the Court will order an individualized bond hearing.

Petitioner bears the burden of proof of showing that she is entitled to relief or a remedy. *See* 28 U.S.C. § 2241; *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (In § 2241 proceeding, "[t]he burden of proof was upon the petitioner to sustain these allegations."); *see also Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner."); *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) ("[I]t was error for the District Court to effectively impose on the Government the burden of proving that [petitioner] was *not* 'in custody in violation of the Constitution or laws or treaties of the United States' " under § 2241); *see also Smith v. Workman*, 550 F.3d 1258, 1273 (10th Cir. 2008) (noting that, in the context a *Brady* violation, the petitioner "bears the burden of showing that the prosecution suppressed material evidence favorable" to the petitioner); *McDonald v. Feeley*, 535 F. Supp. 3d 128, 135 (W.D.N.Y. 2021) (in § 2241 proceeding challenging his immigration detention, petitioner bears burden of proving by preponderance of evidence that he is detained contrary to law).

Section 1226(a) affords Respondents discretion to detain, release on bond, or parole a noncitizen. Notably, this section does not expressly provide a statutory right to immediate release. Generally, the release or bond decision by an immigration judge involves the weighing of evidence and is discretionary. § 1226(a); *Jennings,* 583 U.S. at 295. Discretionary bond decisions are generally not reviewable. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."). "This provision precludes the Court from reviewing the IJ's decision that denied bond because Petitioner was a flight risk." *Mwangi v. Terry*, 465 F. App'x 784, 786–87 (10th Cir. 2012) ("Therefore, to the extent Mr. Mwangi challenges the agency's discretionary bond decision, the magistrate judge was correct that the court lacked jurisdiction.") (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)); *Jennings,* 583 U.S. at 295 (explaining that § 1226(e) bars a challenge to a discretionary judgment or decision by the Attorney General regarding detention or release but does not preclude challenges to the statutory framework); *see also Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) ("Although we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision…").

To be sure, federal district courts have broad equitable powers in ordering habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). A federal court is vested with "the largest power to control and direct the form of judgment to be entered in cases brought up before it on *habeas corpus.*" *Hilton v. Braunskill,* 481 U.S. 770, 775 (1987) (citation omitted). "Federal habeas corpus practice ... indicates that a court has broad discretion in conditioning a judgment granting habeas relief." *Id.* In issuing a writ of habeas corpus, a federal court has the power and authority

16

to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243; *see also Clayton v. Jones*, 700 F.3d 435, 443 (10th Cir. 2012) (noting that § 2243 gives district courts "broad discretion to craft appropriate habeas relief."). "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971). It is the "nature of the violation" that "determines the scope of the remedy." *Id.* at 16. Generally, the Court has authority to order release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

Here, the Court in its discretion would order a bond hearing, as an individualized bond hearing would provide Petitioner with the process she is due under the statute. *See* § 1226(a) (providing that the Attorney General *may* continue to detain a noncitizens pending a decision on removal or *may* release the noncitizen on bond or parole); *see Martinez Escobar v. Baltazar*, No. 26-CV-00296-NYW, 2026 WL 503313, at *4 (D. Colo. Feb. 24, 2026) (ordering bond hearing rather than immediate release where due process rights were violated by respondents' failure to apply § 1226(a) discretionary detention provisions); *Gutierrez v. Garcia*, No. 2:25-CV-001145-WJ-KRS, 2026 WL 310064, at *5 (D.N.M. Feb. 5, 2026) (noting that process due is an individualized bond hearing); *Velasquez Salazar v. Dedos*, No. 1:25-cv-835, 2025 WL 2676729, at *5 (D.N.M. Sep. 17, 2025) ("Because ... § 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ."). Accordingly, the Court finds that the proper remedy is an individualized bond hearing pursuant to § 1226(a).

Petitioner also does not argue or demonstrate in her Petition that any due process or constitutional violation *requires* her release. She does not cite any standard or law the Court should

17

apply in deciding whether a due process violation requires her release.  For example, should the Court apply the *Mathews* test in determining whether she should be immediately released, and if so, how does the *Mathews* test apply to the facts of this case to warrant her immediate release?[4] The Court therefore declines to *sua sponte* analyze whether her constitutional claim requires her release over a bond hearing, as this issue was not properly argued or presented to the Court. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments or perform research on behalf of litigants) (quoting *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him.").[5] The principle of party presentation is particularly appropriate here, where this district court is overwhelmed with habeas petitions, and petitioners request that the Court rule immediately. If the Court were to act as Petitioner's counsel and make arguments or do research on her behalf, it would prejudice other petitioners by delaying a ruling on their petitions. Therefore, Petitioner has not

---

[4] Alternatively, the Court's analysis above suggests that a bond hearing, not immediate release, is warranted under the *Mathews* test.

[5] These principles apply even where a party is pro se.  Although pro se pleadings should be construed liberally, a district court may not act as a pro se party's advocate, advancing arguments or facts on their behalf. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").  Moreover, pro se parties must comply with the same procedural rules and substantive law as counseled parties. *Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir. 1994).

properly placed before the Court the issue of whether she must be immediately released, or she has not carried her burden.

**IV.** **This opinion and the judgment should not be construed as addressing detention under § 1231, if that provision becomes applicable.**

The Petition presented the Court with a narrow issue, whether Petitioner's detention *pending a decision on removal* is governed by § 1225 or § 1226. Once an order of removal has become final, the authority governing a noncitizen's detention shifts to another statutory provision, 8 U.S.C. § 1231(a)(2). *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022) ("After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day removal period, during which the Government "shall" detain the noncitizen.") (citing 8 U.S.C. §§ 1231(a)(1), (2)).

Section 1231 governs the detention of noncitizens "during" and "beyond" the "removal period." 8 U.S.C. § 1231(a)(2)–(6). In general, when a noncitizen is ordered removed, the Attorney General shall remove them within 90 days, known as the "removal period." § 1231(a)(1)(A). The "removal period" begins once a noncitizen's removal order "becomes administratively final," § 1231(a)(1)(B), meaning the order has been affirmed by the BIA or the time for seeking review has expired, 8 U.S.C. § 1101(a)(47)(B). *Riley v. Bondi*, 606 U.S. 259, 267 (2025) ("An order of removal becomes final at the earlier of two points: (1) 'a determination by the [BIA] affirming such order,' or (2) 'the expiration of the period in which the alien is permitted to" petition the BIA for review of the order.') (citation omitted). During the removal period, detention is mandatory. § 1231(a)(2).

Here, no party has asserted that § 1231 applies. Therefore, as of the entry of this order, it appears that the Court retains the ability to order the relief requested in the Petition, i.e., to

determine whether §§ 1225 or 1226 applies to her detention pending a decision on removal. The Court's order and judgment should not be construed to opine on whether or when in the future Petitioner may be detained under § 1231.

## V.    The Court need not rule on Petitioner's remaining claims.

Because the Court grants habeas relief, the Court need not address her other claims or enter a declaration. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative."); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Scott v. Mullin*, 303 F.3d 1222, 1224 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim). As explained above, Petitioner has not demonstrated that any due process violation entitles her to release over a bond hearing. Therefore, she has received all relief to which she is entitled.

Alternatively, the Court would not grant relief on her other claims. Petitioner asserts that the conditions of her confinement violate her Eighth Amendment right to be free from cruel and unusual punishment. Generally, claims related to conditions of confinement are properly raised under a civil rights action, not a habeas corpus petition. The basic purpose of a § 2241 habeas proceeding is to permit a person in custody to attack the legality of custody, and the "traditional function of the writ is to secure release from illegal custody." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). Therefore, a challenge to "the fact or duration of" confinement must be brought through a habeas

20

corpus petition, while a challenge to the conditions of confinement must be brought through a civil rights action under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012); *Rael v. Williams*, 223 F.3d 1153, 1154 (10th Cir. 2000). Therefore, Petitioner's allegations regarding inadequate conditions or medical treatment fall outside the scope of the Court's habeas review.

**CONCLUSION**

The Court concludes that Petitioner's detention is governed by § 1226(a), not § 1225(b)(2)(A), and that due process entitles Petitioner to a bond hearing under § 1226(a). Accordingly, the Petition (Doc. 1) is granted in part. Respondents are directed to arrange an individualized bond hearing pursuant to § 1226(a) for Petitioner before an immigration judge within **seven (7) days** of the entry of this order. Respondents shall not deny Petitioner bond or parole on the basis that § 1225(b) requires mandatory detention. The parties are ordered to file a status report within **ten (10) days** of the entry of this order. The Court will enter a separate judgment.[6]

**IT IS THEREFORE ORDERED** that Petitioner's Petition (Doc. 1) is hereby **GRANTED in part and DENIED in part** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Respondents shall provide Petitioner an individualized bond hearing before an immigration judge pursuant to § 1226(a), as opposed to § 1225(b), within

---

[6] The Court need not delay entry of judgment to wait for Respondents to comply with the Court's order. The Court "always retains jurisdiction to enforce its lawful judgments, including habeas judgments." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010); *Burton*, 975 F.2d at 693 (explaining that district court has authority to enforce its habeas judgment).

**seven (7) days** of the entry of this order, provided that the Court makes no determination whether or when in the future § 1231 provisions may apply.

  **IT IS FINALLY ORDERED** that the parties are directed to file a joint status report within **ten (10) days** of the entry of this order.

       ___/S/_____
       KEA W. RIGGS
       UNITED STATES DISTRICT JUDGE